IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAUN GAGE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-CV-92-GLJ |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant Shaun Gage requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background and Procedural History

Claimant was 46 years old at the time of the administrative hearing. (Tr. 52). He completed eleventh grade and has past relevant work as a stone mason. (Tr. 37, 52). Claimant alleges an amended onset date of November 8, 2020, due to limitations imposed by degenerative disc disease, a torn ACL, and multiple heart attacks. (Tr. 226, 239).

### Procedural History

On January 15, 2021, Claimant protectively applied for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Claimant subsequently withdrew his request for hearing on his Title II claim, and indicated he would only be pursuing his Title XVI claim. (Tr. 226). On November 10, 2021, Administrative Law Judge ("ALJ"), Robert A. Kelly, conducted an administrative hearing and entered an unfavorable decision on January 21, 2022. (Tr. 23-39, 45-75). The Appeals Council denied review (Tr. 1-7), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.971, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 38). At step two he determined that Claimant had the severe impairments of coronary artery disease,

status-post coronary artery bypass surgery, ischemic cardiomyopathy, status-post myocardial infarction, mild lumbar spondylosis, drug abuse, and depression. (Tr. 29). He found at step three that Claimant did not meet any Listing. (Tr. 29-31). At step four he found Claimant had the residual functional capacity ("RFC") to perform a limited range of light work, *i.e.,* he could sit/stand/walk six hours in an eight-hour workday, occasionally stoop, kneel, crouch, crawl or climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. (Tr. 31). The ALJ also found Claimant could avoid ordinary workplace hazards but should have no more than occasional exposure to hazards and could not work in an environment that allows direct access to drugs. (Tr. 31). Due to psychologically-based limitations, the ALJ found Claimant could understand, remember, carry out, and maintain pace for simple, routine and repetitive tasks, tolerate ordinary levels of supervision, occasional changes in the work setting or tasks, constant interaction with co-workers, and frequent interaction with the general public, but would be off-task or work at a slow pace for up to 5% of the average workday and cannot perform work that requires performing effectively under stress. (Tr. 31). The ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, marker, parking lot attendant, and cafeteria attendant. (Tr. 38).

## Review

Claimant contends that the ALJ erred by: (1) failing to include any limitations related to his drug usage; (2) failing to evaluate his substance use disorder in accordance with Soc. Sec. R. 13-2p, in addition to failing to conduct a drug and alcohol abuse

materiality determination; and (3) failing to build an accurate and logical bridge to the ALJ's RFC that Claimant would be off-task or work at a slow-pace up to 5% of a normal workday.

The relevant medical evidence reveals that on November 8, 2020, Claimant presented to an emergency room with a sharp chest pain, nausea, diaphoresis, and elevated troponin levels. (Tr. 331, 334, 375, 509). Claimant indicated that the chest pain had been ongoing for a year and denied drug usage, but drug screenings were positive for amphetamines, opiates, and cannabinoids. (Tr. 331, 336). An echocardiogram revealed a non-ST elevated myocardial infarction, motion abnormalities, and reduced left ventricular systolic function. (Tr. 339, 511). Claimant was assessed with two vessel coronary artery disease and a coronary bypass graft was recommended. (Tr. 369-72, 649-50). Claimant's bypass surgery was rescheduled following positive tests for amphetamine use. (Tr. 315-16, 330, 374, 443).

On December 28th, 2020, Claimant visited the emergency department reporting mid-sternal chest pain with radiation to the neck, shortness of breath, and diaphoresis. (Tr. 325, 649-54). Claimant indicated that he had not used meth for two weeks but tested positive for amphetamines and cannabinoids at this time. (Tr. 649, 653). Claimant was transferred to another facility at which the clinical impression was marijuana use, methamphetamine use, and non-ST elevated myocardial infarction. (Tr. 307). At this point, Claimant admitted to "eating" methamphetamine two days prior and refused rehab services. (Tr. 307-08). Claimant was discharged with instructions to follow up with

cardiology in February 2021, and informed that he must be substance free for two weeks prior to the bypass surgery. (Tr. 312, 320-21).

The record does not document any further treatment until October 2021, when Claimant was hospitalized with chest pain, dyspnea, nausea, and dizziness. (Tr. 674). A cardiac catheterization and angiogram revealed three vessel coronary artery disease. (Tr. 674-75). During this visit, an addiction consultation was performed in which Claimant indicated he used methamphetamines intravenously beginning seventeen years prior, but at the time only smoked methamphetamine once per month when he went to get his groceries. (Tr. 717-18). On November 1, 2021, Claimant underwent coronary artery bypass grafting and was released following occupational therapy. (Tr. 677, 701-05).

Claimant also visited Dr. Douglas M. Cooper in April 2021, for a physical evaluation pertaining to his Social Security claim. (Tr. 643-47). Pertinent here, Dr. Cooper's impression noted claimant had multiple heart attacks with coronary artery disease and stiffness in his lumbar. (Tr. 643).

On April 6, 2021, Claimant visited Michael Bergman, M.S., for a psychological evaluation in relation to his Social Security application. (Tr. 635-641). During this evaluation, Claimant indicated he was unable to work due to physical limitations and that he had difficulties remembering, paying attention, and "keeping up" with work (Tr. 635-36, 639). Mr. Bergman's assessment noted Claimant endorsed hearing voices, but Claimant's judgment and insight remained intact. (Tr. 637-38). Bergman assessed Claimant with mood disorder, cannabis use, dyssomnia associated with physical pain, nicotine dependence, alcohol abuse in full sustained remission since 2007, and

amphetamine use in early full remission. (Tr. 641). Contrary to Bergman's assessment, Claimant's mental status examinations throughout his various hospital visits were largely unremarkable. (Tr. 310, 331-32, 337, 347, 352, 376-76, 652).

State examiners determined initially and upon reconsideration that Claimant could perform light work except he could occasionally climb ramps/stairs, balance, stoop, kneel crouch, and crawl, but never climb ladders/ropes/scaffolds. (Tr. 80, 100). As to his mental impairments, state reviewing physicians determined Claimant was moderately limited in his ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and (5) respond appropriately to changes in the work setting. (Tr. 82, 102-03).

At the administrative hearing, Claimant testified regarding his recent heart attack and coronary artery bypass surgery, explaining he experienced chest pain with exertion and had a limited ability to walk due to his cardiac issues. (Tr. 57-63). As to his drug usage, Claimant testified that from January 2021 until his hospitalization in October 2021, he used methamphetamine once a month to give him the energy to go to the store, and that he last used methamphetamine prior to October 10, 2021. (Tr. 63-65).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 65-71). The VE testified that such a claimant could perform the representative jobs of marker, parking lot attendant, and cafeteria attendant. (Tr. 66). The ALJ then offered three additional

hypotheticals with various limitations. (Tr. 66-70). Pertinent to this appeal is the fourth hypothetical in which an individual would be absent two or more workdays per month, work at a slow pace for 15% or more of the workday, and require frequent breaks, in addition to the standard breaks, such that he would be off-task for 15% or more of the workday. (Tr. 70-71). The VE testified that such a person would be unemployable. (Tr. 71).

In his written opinion at step four, the ALJ thoroughly summarized the Claimant's hearing testimony and the medical evidence in the record. (Tr. 31-37). He then found that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with treatment records. (Tr. 32). The ALJ found the opinions of the state agency medical and psychological consultants generally persuasive, but found "additional limitations" were appropriate in light of the evidence as a whole. (Tr. 35). Conversely, he found the opinions of Michael Bergman, M.S., to be of little use in evaluating Claimant's functionality because he offered "relatively vague and conclusory statements" and his opinions regarding Claimant's physical capabilities were outside of his expertise. (Tr. 35-36). Similarly, the ALJ found the opinion of Dr. Cooper not generally persuasive because his opinions were not well supported and inconsistent with the evidence. (Tr. 36). The ALJ ultimately concluded that Claimant was not disabled at step five. (Tr. 37-38).

I.   **Claimant's Substance Abuse**

Claimant first asserts that the ALJ erred by not including any limitations stemming from Claimant's substance abuse. The Commissioner argues that the ALJ did include

limitations, and the Court agrees. On its face, the ALJ's RFC determination accounts for Claimant's substance abuse by providing Claimant cannot work in an environment that allows direct access to drugs. (Tr. 31). Claimant contends that substance abuse can impact an individual's functioning. Although this may be true, Claimant does not point to any additional limitations the ALJ did not consider, and he does not point to any evidence in the record demonstrating additional limitations were necessary. As such, the ALJ did not err by not including additional limitations relating to Claimant's substance abuse. *Montano v. Saul*, No. 20-cv-160-KLM, 2021 WL 1169982, at *5 (D. Colo Mar. 29, 2021) ("Plaintiff must direct the Court's attention to some evidence that was apparently overlooked by the ALJ showing additional functional impairments based on the abuse."); *Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (rejecting argument that "the ALJ's RFC determination should have included [the claimant's] subjective complaints" where the ALJ found the objective medical evidence did not support the claimant's "allegations concerning . . . the limiting effects of his pain" and the claimant did "not point to any medical evidence indicating his RFC should be more limited.").

Relatedly, Claimant contends that the ALJ erred by failing to evaluate Plaintiff's substance abuse in accordance with Soc. Sec. R. 13-2p and by not performing a drug and alcohol abuse ("DAA") materiality determination. The Commissioner asserts that the ALJ properly evaluated Claimant's substance abuse and did not need to determine the materiality of Claimant's substance abuse. The Court agrees with the Commissioner.

"[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination

that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). When substance abuse is present, the ALJ's task is to determine first whether the Claimant is disabled. If the ALJ finds that the Claimant is disabled, then the ALJ determines whether the Claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935. To resolve this issue, the ALJ evaluates which of Claimant's limitations "would remain if [Claimant] stopped using drugs or alcohol and then determine whether any or all of [Claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2); Soc. Sec. R. 13-2p, 2013 WL 621536 (Feb. 20, 2013). If the remaining limitations are deemed not disabling, then the Claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(i). Conversely, if the remaining limitations are deemed disabling, then the Claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. ¶ 416.935(b)(2)(ii).

Soc. Sec. R. 13-2p sets out further guidance regarding the process for determining whether DAA is a material contributing factor. Soc. Sec. R. 13-2p, 2013 WL 621536 (Feb. 20, 2013). "[W]e must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA . . . We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and evidence does not establish that claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." *Id.* at \*9.

Here, the ALJ considered all of Claimant's impairments, including his substance abuse, and concluded Claimant was not disabled. (Tr. 31-39). At this point, the ALJ was not required to evaluate the materiality of Claimant's DAA. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)."); Soc Sec. R. 13-2p, 2013 WL 621536, at *5 (Feb. 20, 2013) ("Step 2: Is the claimant disabled considering all of his or her impairments, including DAA? . . . If the claimant is not disabled, deny the claim.").

## II.   ALJ's Off-Task Limitation

Lastly, Claimant argues the ALJ failed to "build an accurate and logical bridge" between the evidence and the ALJ's RFC determination that Claimant will be off-task or work at a slow pace for up to 5% of the workday. However, the Court finds the ALJ sufficiently linked the evidence to his determination.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, No. 12-2509-SAC, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ discussed Claimant's

contentions that he had a limited ability to walk, experienced chest pain with exertion, had difficulties with memory, concentration, completing tasks, and following directions. (Tr. 32, 34). He also explicitly considered the state agency psychological consultants' findings that the Claimant's attention, concentration, and pace were adequate for simple tasks and noted that Claimant's mental status examinations were largely normal. (Tr. 35-36). Ultimately, the ALJ found Claimant's statements not entirely consistent with the evidence; however, he noted that Claimant's "cardiac issues would reasonably result in some degree of physical limitation, but the relative paucity of evidence does not support a higher degree of restriction[.]" (Tr. 34, 36). Ultimately, despite no medical provider opining that Claimant would be off-task for any period of time, the ALJ included an up to 5% off-task limitation.

The Court can follow the ALJ's reasoning that Claimant's ability to stay on task is limited and, as such, the ALJ did not err. *See Barbara J. B. v. Kijakazi*, No. 21-CV-218-JFJ, 2022 WL 2343343 at *6 (N.D. Okla. June 29, 2022) (holding the ALJ sufficiently explained her off-task determination where no evidence existed indicating Claimant would be off-task more frequently.); *Higbee v. Colvin*, No. 1:14CV00064, 2015 WL 803129, at *1 (D. Utah Feb. 26, 2015) (finding harmless error where no medical source opined as to a greater off-task limitation than that which was assigned by the ALJ's because the limitation was in claimant's favor.). Although the ALJ could have provided a more substantive explanation, "'a decision of less-than-ideal clarity' should be upheld [where] 'the agency's path may reasonably be discerned.'" *Richard v. Berryhill*, No. 16-CV-928-HE, 2018 WL 920651, at *2 (W.D. Okla. Feb 16, 2018) (citing *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979)).

Contrary to Claimant's arguments, therefore, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (internal citations omitted). The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner of the Social Security Administration is AFFIRMED.

**DATED** this 12th day of February, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**